IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| WILLIAM AVERY McKNIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:14-0059 |
| | ) | Judge Haynes |
| v. | ) | |
| | ) | |
| MARSHALL COUNTY JAIL and | ) | |
| SABRINA PATTERSON, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM**

Plaintiff, William Avery McKnight, filed this pro se action under 42 U.S.C. § 1983 against the Defendants: Marshall County Jail and Sabrina Patterson, the jail administrator. Plaintiff seek only damages for violation of his First Amendment right to access to mass media information. After a review of the pro se complaint, the Court set a frivolity hearing to assess Plaintiff's claims.

Plaintiff was convicted of aggravated burglary and theft of property over ten thousand for which he received a sentence of eight years at twenty-five percent. Plaintiff, whom has been at the Marshall County Jail for more than fifteen months, asserts that he cannot get information about the outside world, such as newspapers or television. Plaintiff can order any books under the jail's rule that inmates can receive outside materials only from publisher. Plaintiff who is in general population has seen inmates playing their radio. Jail inmates who are laundry workers have magazines, radio and compact disc players. To buy a book from a publisher, Plaintiff states that he would have to rely on his mother.The jail has a library and an inmates can get three

1

books, but newspapers are not allowed because the papers cause as a hazard. Plaintiff has utilized the jail library, but the books there are nonfiction. There are also legal books available upon an inmate's request. Plaintiff has made multiple requests for books. The jail commissary has books for purchase that Plaintiff described as westerns, romance books, a Bible and two other books for eight dollars ($8.00) and used books for two fifty ($2.50), I think.

Defendant's representative stated that inmates can add a newspaper, but reading is limited to the library, not the inmates' cell area. The Defendant Patterson stated that radios were restricted because inmates flushed them down the toilet, stopping the jail's sewage system that costs thousands of dollars to repair.

In Bell v. Wolfish, 441 U.S. 520, 550-51 (1979), the Supreme Court found that a regulation under which prisoners could receive books by mail from only publishers satisfied First Amendment standards. The Supreme Court reasoned that this rule was reasonably related to prison security and that the rule was administratively convenient because otherwise, there would have to be an independent search of each book.

> We conclude that a prohibition against receipt of hardback books unless mailed directly from publishers, book clubs or book stores does not violate the First Amendment rights of MCC inmates. That limited restriction is a rational response by prison officials to an obvious security problem. It hardly needs to be emphasized that hardback books are especially serviceable for smuggling contraband into an institution; money, drugs, and weapons easily may be secreted in the bindings. They also are difficult to search effectively. <u>There is simply no evidence in the record to indicate that MCC officials have exaggerated their response to their security problems and to the administrative difficulties posed by the necessity of carefully inspecting each book mailed from unidentified sources. Therefore, the considered judgment of these experts must control in the absence of prohibitions far more sweeping than those involved here.</u>

> Our conclusion that this limited restriction on receipt of hardback books does not infringe on the First Amendment rights of MCC inmates is influenced by several other factors. The rule operates in a neutral fashion, without regard to the content of the expression. And there are alternative means of obtaining reading material that have not been shown to be burdensome or insufficient . . . [T]he restriction, as it is now before us, allows softbound books and magazines to be received from any source and hardback books to be received from publishers, bookstores and book clubs. In addition, the MCC has a "relatively large" library for use by inmates. To the limited extent the rule might possibly increase the cost of obtaining published materials, this Court has held that where "other avenues" remain available for the receipt of materials by inmates, the loss "cost advantages does not fundamentally implicate free speech values." We are also influenced in our decision by the fact that the rule's impact on pretrial detainees is limited to a maximum period of approximately sixty days. In sum, considering all the circumstances, we view the rule, as we now find it, to be a "reasonable 'time, place and manner'" regulatio[n that is] necessary to further significant governmental interests.

Id. at 550-52 (emphasis added in part) (citations omitted).

Since Martinez, the Supreme Court has explainedthat the Martinez holding:"We do not believe that Martinez should be read to require a strict 'least restrictive' alternative analysis but only that a prison regulation need only be generally necessary to a legitimate government interest and further, that Martinez is limited to regulations concerning outgoing correspondence." Thornburgh v. Abbott, 490 U.S. 401, 411 (1989).

As applied her, the jail has treasonable institutional concerns about newspapers in the general population area, but newspaper are available in the library as are books. For inmates with jobs, radios and disc players are available and the jail restriction on radios in general population areas are reasonable. For these reasons, the Court concludes that Plaintiff has failed to state a claim under relief can be granted and this action should be dismissed.

3

An appropriate Order is filed herewith.

**ENTERED** this the 30th day of October, 2014.

*[signature]*
WILLIAM J. HAYNES, JR.
United States District Judge